FILED
U.S. DISTRICT COURT
UNITED STATES DISTRICT COURT DISTRICT OF COLORADO

United States District Court for the District of Colorado

2013 JUL -1  PM 2:40

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

Wade A. Williams
    Plaintiff,

Case No.    1:12-cv-02844-REB-MEH

-v-

Midland Funding, LLC
Midland Credit Management, Inc
Encore Capital Group, Inc
    Defendants.

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    Plaintiff asks the court to deny Defendant's Motion for Summary Judgment and states the following:

### Introduction

1) Plaintiff is Wade A. Williams; defendants are Midland Funding, LLC (Hereinafter MF), Midland Credit Management, Inc.(hereinafter MCM), Encore Capital Group, Inc (hereinafter Encore).

2) On October 26th, 2012 plaintiff sued defendants for violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692 et seq.; for damages for violations of the Fair Credit Reporting Act (FCRA) 15 U.S.C. §1681 et seq., and for damages for violations of the Colorado Fair Debt Collection Practices Act (CFDCPA), Colorado Revised Statute Title 12, Article 14, Section 101, (12-14-101) et seq.

3) On June 7th, 2013 defendants filed a Motion for Summary Judgment.

4) Summary Judgment is improper in this case because there are genuine issues of fact on each element of plaintiff's cause of action for violations of the FCRA: impermissible access of credit file, FDCPA and CFDCPA.

## Statement of Facts

5) There is no documentation whatsoever annexed to the defendant's pleading to evidence any contract or any other visible evidence of any alleged "account" with a Wade A. Williams other than a disputed account summary and a disputed uncertified "declaration" of a third party.

6) There are no documents with Plaintiff's name attached purporting to authenticated evidence a transfer of ownership of the alleged "account" to any of the defendants or any documentation showing the actual existence of any alleged "account" from Washington Mutual, Chase Bank, or any other entity alleged to be in the chain of ownership. (See Plaintiff's Affidavit, Exhibit 7, ¶9)

7) There is no verified evidence **in any form** that has been entered into the court record showing any account holder date of birth, social security number or other personal identification of the alleged "account"; or terms of transfer of ownership of the alleged "account".

8) Other than simple generic and non-specific statements in a disputed "declaration" with related Exhibits made by an alleged employee who may work for a defendant (MCM) there is no evidence in any form of any "account" of Wade A. Williams on the record that would allow any purpose for the defendants to report on any credit reporting agency about the plaintiff under the FCRA.

9) The "Declaration" of John Moreno (Hereinafter Moreno) is not an Affidavit as there is no Notary signature to attest to its authenticity. The statement of the affiant does not become an affidavit unless the proper official administers the oath. See Defendant's Motion for Summary Judgment, Exhibit A.

10) The alleged bill of sale that allegedly shows transfer of ownership from Chase Bank to MCM does not have Wade Williams' name, address, alleged account number, Date of Birth, social security number or phone number on it. See Defendant's Motion for Summary Judgment, Exhibit B. and Plaintiff's Affidavit, Exhibit 7, ¶10)

11) An alleged copy of the deposition of Plaintiff is presented in Defendant's motion. It is a mix and match collection of information that allegedly came from Jennifer Windham, Certified Shorthand Reporter and Notary Public within Colorado. This document is unsigned and there are no affidavits on the record to attest to the document's authenticity. There is no evidence on the record that Jennifer Windham verified this information. See Defendant's Motion for Summary Judgment, Exhibit C.

12) Also attached to Defendant's motion is a letter that was written from Plaintiff to MCM. This document is not disputed by Plaintiff.

13) The last Exhibit in Defendant's motion (Exhibit E) is alleged account information. The source of this documentation is not disclosed. It appears to come from many different computer systems. The location and ownership of these systems is not stated. It is hearsay.

## Standard of Review

14) Pro Se complaints should not be dismissed for failure to state a claim unless it is apparent that they are unsupportable in law or fact. See Brandon v. Dist. of Columbia Bd. of Parole, 734 F.2d 56, 62 (D.C. Cir. 1984), cert. denied, 469 U.S. 1127 (1985); Williams v. Kullman, 722 F.2d 1048, 1050 (2d Cir. 1983); Bayron v. Trudeau, 702 F.2d 43, 45 (2d Cir. 1983).

15) Although summary judgment is proper in any case where there is no genuine issue of material fact, this is not a case in which the court should grant summary judgment. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

16) A defendant who seeks summary judgment on a plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact by either (1) submitting summary judgment evidence that negates the existence of a material element of plaintiff's claim or (2) showing there is no evidence to support an essential element of plaintiff's claim. *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F3d 1245, 1251 (1st Cir. 1996); *see Celotex Corp.*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Defendants cannot rely on conclusory statements to establish that plaintiff has not presented evidence on an essential element of his claim. Rather, defendant must demonstrate an absence of genuine factual dispute. *See Celotex Corp.* 477 U.S. at 327, 106 S.Ct. at 2555. Only if defendants meet their burden is plaintiff required to respond

by summary judgment proof to show a genuine issue of material fact.  Fed. R. Civ. P. 56(e).

17) In determining whether there is a disputed issue of material fact that precludes summary judgment, the court must consider all evidence in the light most favorable to plaintiff as the nonmovant.  *Garcia v. Pueblo Country Club*, 229 F.3d 1233, 1236-37 (10th Cir. 2002).

18) In General, Pro Se pleadings are held to less stringent standards than those applied to members of the Bar. For example, in reviewing a pro se litigant's complaint for dismissal, the court must read the complaint less stringently than it would an attorney's. See Hughes v. Rowe, 449 U.S. 5, 9-10 (1980) (per curiam); Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam); Madyun v. Thompson, 657 F.2d 868, 876 (7th Cir. 1981).

19) Pro Se complaints cannot be construed inflexibly so as to require dismissal if the complaint fails to request precise appropriate relief. See DeWitt v. Pail, 366 F.2d 682, 684-85 (9th Cir. 1966); Downing v. New Mexico Supreme Court, 339 F.2d 435, 436 (10th Cir. 1964) (per curiam); Holsey v. Bass, 519 F. Supp. 395, 402-03 (D. Md. 1981), aff'd, 712 F.2d 70 (4th Cir. 1983). See generally Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam) (pro se pleadings held to less stringent standards than those applied to attorneys).

20) In response to the difficulty Pro Se litigants have in recognizing summary judgment obligations, some courts have expanded the liberality traditionally demonstrated toward Pro Se pleadings See, e.g., Hughes v. Rowe, 449 U.S. 5, 9-10 (1980) (per curiam); Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam).

21) When considering Defendant's motion, the court must construe the factual allegations in the complaint in the light most favorable to the Plaintiff. In re Stac Elecs. Sec. Litig. , 89 F.3d 1399, 1403 (9th Cir. 1996); Jones v. General Elec. C0., 87 F.3d 209, 211 (7th Cir. 1996). Only if no possible construction of the alleged facts will entitle Plaintiff to relief should the court grant Defendant's motion. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984). If the factual allegations in Plaintiff's complaint support any legal theory that entitles Plaintiff to some relief, the court should overrule Defendant's motion.

## **Argument**

22) Movant's Statements of Material facts are based on a defective declaration of John Moreno. Defendant's Motion to Dismiss ¶1,2,4,6,7,9-16, 19-21,23,25 are all based on a declaration in which the declarant states (emphasis added), "**I do not have personal knowledge concerning all of the information contained in said responses,** but I am informed and believe that the information set forth therein for which **I lack personal knowledge** is true and correct." Moreno admits to not having personal knowledge about his statements.

23) There is no verified statement on the record from the alleged original creditor, Washington Mutual, or Chase Bank that the information from them is true, correct and accurate. Plaintiff has seen no such document (Plaintiff's Affidavit, Exhibit 7, ¶11) The FTC stated in their "The Structure and Practices of the Debt Buying Industry" (page iii) that accuracy of information in transactions between seller and debt buyer is not

guaranteed. (Exhibit 6). How do the defendants know that the data they bought from Chase is correct when it is not guaranteed?

24) In ¶ 3 of Defendant's Motion for Summary Judgment, Defendant claims that Plaintiff has no proof that Encore is a debt collector yet, it clearly states that they are a leader of recovery solutions for consumers on their LinkedIn page (See Exhibit 3 and Plaintiff's Affidavit, Exhibit 7, ¶12).

25) In ¶ 5 of Defendant's Motion for Summary Judgment, Defendant claims that Plaintiff has no evidence that MF is a debt collector yet offers this evidence in ¶ 6 when the defendant states that MF bought this debt from Chase. Why would a debt collector allegedly buy Plaintiff's alleged account if it were not to collect the alleged debt? If it did not buy the debt for collection, then reported a collections account on Plaintiff's credit report is a violation of the FCRA and FDCPA.

26) In ¶ 18 of Defendant's Motion for Summary Judgment, the Defendant mischaracterizes the statement made in my letter they identified as Exhibit D. They state in ¶ 18 that Plaintiff sent to MCM "admitting validated the accounts with the credit reporting agencies." This is not true. The letter states "I have disputed these accounts with the credit bureaus and you have **apparently** validated these accounts with the credit reporting agencies." (Emphasis added). Stating that MCM did validate and that MCM **apparently** did validate are not the same statement. Things often do not appear the way they are, that is why Plaintiff demanded to see proof of the validation.

27) There is no evidence offered by the defendants in their motion for summary judgment that is not disputed by the Plaintiff except for Exhibit D.

28) There is not one undisputed document in the record submitted by defendants as <u>verified</u> <u>evidence</u> to show the existence of any alleged "account" indicating what type of account it is, who the alleged original creditor is, creditor's date of birth, creditor's social security number, its origination date, any amounts that may be owed, any contract, or any other identifying information regarding the alleged account.

29) There is no verified evidence regarding chain of account ownership before the court. There is no document that shows the origins of this account such as an account agreement. There are no documents from the alleged original creditor, Washington Mutual, stating the terms and conditions of the account or any transactions of the alleged account. There are no documents from Chase Bank that have plaintiff's name on them or any information that distinguishes what debts the bill of sale involves. The attached bill of sale (Exhibit E) could be applied to no single person or account.

30) In Argument A (pg7) of Defendant's Motion for Summary Judgment, Defendant declares the Complaint untimely. Basing this statement on when Plaintiff received dunning letters from March 28, 2010 through October 15, 2010. This is a misrepresentation of the truth or outdated application of Federal Law. The Fair and Accurate Credit Transaction Act of 2003 (FACTA) updated the Fair Credit Reporting Act (FCRA) (Pub. L. 108-159, 111 Stat. 1952). After the amendment, 1681p states that a claim for an FCRA violation must be brought either: 1) within two years of the plaintiff's **discovery** of the violation; or b) within five years of the date of the violation, whichever is earlier (Emphasis added). Just because Plaintiff received a dunning letter, does not prove that the Plaintiff **discovered** the transaction on his credit reports. As stated in the Amended Complaint (Docket 5, ¶ 14), "On or about July, 7[th], 2012 Plaintiff reviewed his credit reports at TransUnion,

Equifax and Experian and noticed MCM and E*TRADE were listed on the three credit reports". This discovery is less than two years from the filing of the Complaint and thus timely. The Consumer Report given to Defendant during discovery labeled WW 000003 is a credit report that shows the account was open on March of 2010 (see Exhibit 7). The plaintiff could not have discovered and account on his consumer report before it was opened.

31) In Argument A (pg7) of Defendant's Motion for Summary Judgment, Defendant declares the verification process used by MCM is reasonable. There is no evidence of this process before the court that is not based on the Declaration of John Moreno. Moreno's Declaration is defective. This makes any statements based on Moreno's Declaration null and void.

32) In Argument B (pg10) of Defendant's Motion for Summary Judgment, Defendant relies on unverified Exhibit C. Without having anyone on the record with firsthand knowledge of these Exhibit C and its authenticity, this argument should be discarded as hearsay.

33) In Argument B (pg11) of Defendant's Motion for Summary Judgment claims there is no evidence that there is a debt. This is not correct as the Plaintiff's consumer report shows the alleged debt. (See Exhibit 7).

34) In Argument B (pg11) of Defendant's Motion for Summary Judgment claims Plaintiff is unable to prove he is a consumer as defined in 15 USC 1692a(3). This argument is frivolous. Plaintiff is a consumer based on the definition of this law (see Plaintiff's Affidavit, Exhibit 7, ¶15).

35) The statements in defendants' motion has no other evidence to support the motion as a grounds for summary judgment are conclusory without question and cannot support a motion for summary judgment. *See Celotex Corp.* 477 U.S. at 327, 106 S.Ct. at 2555.

## Objections

36) The evidence submitted in support of Defendant's motion should not be considered by the Court because it is not properly authenticated, is hearsay, and refers to facts not in evidence before the Court. The Court should strike the following summary judgment proof:

a) **DECLARATION OF JOHN MORENO** - Defendants rely on a defective declaration (Defendant's Motion for Summary Judgment).

    i) **LACK OF PERSONAL KNOWLEDGE** - In the DECLARATION OF JOHN MORNENO , Moreno states (emphasis added),

> "**I do not have personal knowledge concerning all of the information contained in said responses**, but I am informed and believe that the information set forth therein for which **I lack personal knowledge** is true and correct." (Defendant's Motion for Summary Judgment, Exhibit A, ¶ 2)

Moreno states he does not have personal knowledge of all of the statements in his declaration. He does not state which statements he has knowledge and which statements he was "informed". Moreno also doesn't state how he was "informed". Given this statement by Moreno, it is entirely possible that the sole statement in his declaration that he has personal knowledge of is his name. (Defendant's Motion for Summary Judgment, Exhibit A, ¶ 2)

ii) **LACK OF AUTHENTICATION** - The DECLARATION OF JOHN

MORNENO is not notarized. Because it is not properly notarized, the

Declaration of John Moreno is a null and void document. Further, the

declaration has not been authenticated before the court and is hearsay.

iii) **LACK OF AUTHORIZATION** - There is also no evidence that John Moreno

is authorized by MCM to testify in court. It is not stated that Moreno is

authorized to make a Declaration for any of the defendants. It is also not stated

who gave him authorization to make declarations and what authority did the

authorizing person have to do so.

iv) **Paragraph 2** – Moreno claims he is a Senior Specialist for Customer Support

for MCM. There is no supporting documentation annexed to his declaration. On

the LinkedIn page for John Moreno, it states Moreno is a Process Analyst at

Encore Capital Group (See Exhibit 2 and Plaintiff's Affidavit, Exhibit 7, ¶13).

This statement is not verified and is hearsay.

v) **Paragraph 3** – Moreno states that Encore is the Parent Company of MF and

MCM. There is no supporting documentation annexed to his declaration. This

statement is hearsay.

vi) **Paragraph 4** – Moreno states information about Encore. He states, "Encore has

no employees and does not purchase or undertake any activities in the collection

of debt." This statement is not plausible. There is a LinkedIn profile online for a

John Moreno that works at Encore Capital Group (Exhibit 2). It is unlikely that

there are two John Moreno and one works for MCM and one works for Encore.

If you take Moreno at his word, this scenario is not possible as he claims encore

has no employees. Also, on Encore's own LinkedIn page, they state that they
have between 1001 and 5000 employees (Exhibit 3 and Plaintiff's Affidavit,
Exhibit 7, ¶12 ). Also, from the Encore LinkedIn company site you can search
for employees of Encore. On June 29, 2013 that search resulted in 708 profiles
of people who claim to work at Encore (Exhibit 4 and Plaintiff's Affidavit,
Exhibit 7, ¶14). Encore's own website lists thirteen members of their leadership
team (Exhibit 5, and Plaintiff's Affidavit, Exhibit 7, ¶). Moreno's statement in
paragraph 4 is not true.

vii) **Paragraph 5** – Moreno states information about MF. He did not state that he
works for MF in his declaration. There is no evidence before the Court to
support Moreno's statements about MF. This statement is hearsay.

viii) **Paragraph 6** – Moreno states that MF purchased the account from Chase. He
has not stated that he worked at either company. There is no evidence before the
Court to support Moreno's statements about MF or Chase. This statement is
hearsay.

ix) **Paragraph 7** – Moreno states that MF assigned the account to MCM for
Collection in March of 2010. There is no evidence before the court to support
this statement. There is no evidence before the court that Moreno worked at
MCM or MF in 2010. This statement is hearsay.

x) **Paragraph 8** – Moreno states information was sent from MCM to Plaintiff. He
does not state how he knows this and what this documentation said. He also
neglected to say if he mailed the information or if he saw another person mail

this parcel. There is no supporting information such as a copy of the letter or a certified mail number. This statement is hearsay.

xi) **Paragraph 9, 10, 11, 12, 13, 14, and 15** – Moreno states the account was verified. He does not say who allegedly resolved the dispute. Moreno never declares that he has access to the E-Oscar system and he does not state his training on the E-Oscar Training. This statement is hearsay.

xii) **Paragraph 16** – Moreno claims MCM reviewed its records and no incomplete or inaccurate information was discovered. He does not state when, where or who did this review and what systems were used. This statement is hearsay.

xiii) **Paragraph 17** – Moreno claims the results of MCM's investigation into plaintiff's disputes were reported to the credit reporting agencies. He does not state when, where or who did this reporting and what systems were used. This statement is hearsay.

b) **Exhibit B** is an alleged bill of sale. The bill of sale does not have plaintiffs name, address, social security number, date of birth, alleged account number or other text that would identify the bill of sale as relating to an alleged account of the plaintiff. This document is not evidence that any account of Plaintiff's was assigned or purchased. The bill of sale has not been authenticated before the court and is hearsay.

c) **Exhibit C** is not signed or notarized by anyone. No one has stated on the record this document is authentic. The document has not been authenticated before the court and is hearsay.

d) **Exhibit E** appears to be a collection of alleged account information. This collection is not signed or notarized. The origin is not stated. It is unknown if they come from the

same system and what system that is. The document has not been authenticated before the court and is hearsay.

## Summary Judgment Evidence

37) In support of his response, plaintiff includes the following evidence in the attached appendix:

a. Affidavit. The affidavit of Wade A. Williams establishes the fact that there is no undisputed evidence before the court that there is an account of Wade A. Williams in existence and that MF, MCM or Encore are the owner of the account and would have any right to access or report to credit reports on the disputed account. This is labeled Exhibit 1. The Affidavit also authenticates Exhibits 2-6.

b. Webpage showing John Moreno's LinkedIn page summary. This shows that there is a John Moreno that works at Encore. This brings into question John Moreno's statements that he works at MCM and that Encore has no employees as he stated in his declaration. This is labeled Exhibit 2.

c. The LinkedIn corporate page for Encore. This states Encore has between 1001 and 5000 employees. This contradicts the declaration of John Moreno stating Encore has no employees. This is labeled Exhibit 3.

d. The LinkedIn search results for employees of Encore showing 708 employees. This entirely contradicts the declaration of John Moreno's which he declared Encore has no employees. This is labeled Exhibit 4.

e. The Leadership Team page from Encore's website. This contradicts the declaration of John Moreno's which he declared Encore has no employees. This is labeled Exhibit 5.

f. Page iii of The Structure and Practices of the Debt Buying Industry, January 2013, Federal Trade Commission. Shows that accuracy of information in transactions between seller and debt buyer is not guaranteed. This is labeled Exhibit 6.

g. Exhibit 7 is a consumer credit report from Equifax on May 27,2011 previously given to Defendants in Discovery. This shows the alleged account was opened in March of 2010.

## Conclusion

The Complaint in this case was timely. The Defendants have not shown through authenticated evidence before the Court that they own an account of the Plaintiff in this case that would give them a permissible reason to report to Plaintiff's credit report or collect on any alleged debt. Plaintiff has disputed this account. Plaintiff through his affidavit disputes this account and that this account is his. In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." *Lunch Props.*, 140 F.3d at 625. The defendants have proffered nothing more than disputed information about a disputed account. There are facts that are disputed based on the included Affidavit of Wade A. Williams.

Further, the "Declaration" of John Moreno in Defendant's Motion for Summary Judgment is not an Affidavit as there is no Notary signature to attest to its authenticity. Moreno also states he does not have firsthand knowledge of all of the statements in his defective declaration. All statements and evidence related to this defective Declaration are null and void.

Additional Exhibits (B, C,E) attached to Defendant's Motion are disputed and have nothing on the record to attest to their authenticity.

WHEREFORE, because the Defendants' have failed to show there are no issues of material fact before the Court The Plaintiff respectfully requests the Court DENY the Defendants' motion for summary judgment and allow Plaintiff's claim to move forward to trial on the merits.

Respectfully Submitted,

Wade A. Williams
13843 Fairfax Street
Thornton, Colorado 80602
(720) 515-9233

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been delivered this 1st day of July, 2013 by Certified U.S. Mail delivery to:

Joseph J. Lico, Esq.,
Adam L. Plotkin, P.C.
621 17th Street, Suite 1800
Denver, CO 80293

Wade Williams
13843 Fairfax Street
Thornton, CO 80602
(720) 515-9233

## UNITED STATES DISTRICT COURT
## United States District Court for the District of Colorado

Wade A. Williams
Plaintiff,

                 Case No.      1:12-cv-02844-REB-MEH

-v-

Midland Funding, LLC
Midland Credit Management, Inc
Encore Capital Group, Inc
Defendants.

### Affidavit of Wade A. Williams

       NOW COMES the Affiant, Wade A. Williams of Thornton, Colorado who is over

the age of 21 years, competent to testify, and declares as follows under penalty of perjury

regarding Case No. 1:12-cv-02844-REB-MEH Wade A Williams v Midland Funding,

LLC et al.

1. That Affiant/Plaintiff has never had any business dealings or any accounts with,
   made application for credit from, made application for employment with, applied
   for insurance from, or received a bona fide offer of credit from Midland Funding,
   LLC (Hereinafter MF), Midland Credit Management, Inc.(hereinafter MCM),
   Encore Capital Group, Inc (hereinafter Encore).

2. That Affiant/Plaintiff never gave his consent for MF, MCM or Encore to obtain or
   report to his credit report from any agency at any time.

**EXHIBIT 1**

3. That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that would show or prove that MF, MCM or Encore is the owner of any account originating with Washington Mutual of Wade Williams.

4. That Affiant/Plaintiff is not in receipt of anything, nor is there anything undisputed and on the record made, that would show or prove that MF, MCM or Encore acquired any account of Wade Williams from Washington Mutual or Chase.

5. That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that would show or prove that there is any account of Wade A. Williams that originated with Washington Mutual where there is any balance due and owing that could be collected by MF, MCM or Encore.

6. The Plaintiff, Wade A. Williams has never met John Moreno.

7. Prior to this litigation, the Plaintiff, Wade A. Williams had never heard of John Moreno.

8. The Plaintiff, Wade A. Williams has never opened an account with MF, MCM or Encore.

9. There are no documents with Plaintiff's name attached purporting to authenticated evidence a transfer of ownership of the alleged "account" to any of the defendants or any documentation showing the actual existence of any alleged "account" from Washington Mutual, Chase Bank, or any other entity alleged to be in the chain of ownership.

10. The alleged bill of sale (See Defendant's Motion for Summary Judgment, Exhibit B) that allegedly shows transfer of ownership from Chase Bank to MCM does not

**EXHIBIT 1**

have Wade Williams' name, address, alleged account number, date of birth, social security number or phone number on it.

11. Affiant has not seen evidence in the form of a verified statement from the alleged original creditor, Washington Mutual, or Chase Bank that the information from them is true, correct and accurate.

12. On June 29th, 2013 Plaintiff read on the Encore LinkedIn page that they are a leader of recovery solutions and employ between 1001 and 5000 people.

13. On June 29th, 2013 Plaintiff read on the John Moreno's LinkedIn page that Moreno is a Process Analyst at Encore Capital Group.

14. On June 29th, 2013 Plaintiff did a search for employees of Encore Capital Group. The results of the search for 708 people who worked at Encore Capital Group.

15. Plaintiff is a consumer as defined in 15 USC 1692a(3).

**EXHIBIT 1**

<u>NOTARY'S VERIFICATION</u>

| | |
|---|---|
| STATE OF COLORADO | § |
| | § |
| COUNTY OF ADAMS | § |

On this day personally came before me the above-named Affiant, who proved his identity to me to my satisfaction, and he acknowledged his signature on this Affidavit in my presence and stated that he did so with full understanding that he was subject to the penalties of perjury.

AFFIRMATION

I hereby affirm that I prepared and have read this Affidavit and that I believe the foregoing statements in this Affidavit to be true and correct. I hereby further affirm that the basis of these beliefs is my own direct knowledge of the statements described herein.

Further the Affiant sayeth naught.

Signed in Thornton, Colorado
Date: _July 1, 2013_

_____
Wade A. Williams

Name of Notary _Ann Myong_

Signature of notary _Ann Myong_          seal

```
ANN MYONG
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20034037591
MY COMMISSION EXPIRES NOVEMBER 4, 2015
```

**EXHIBIT 1**

Search...
 Advanced

Home    Profile    Network    Jobs    Interests

Premium Solutions    Upgrade

High Demand Careers - CCCS academic programs focus on the hottest emerging careers.



# John Moreno

Process Analyst at Encore Capital Group

San Diego, California   Legal Services

| Current | Encore Capital Group |
| Previous | Encore Capital Group, Secret Headquarters, Inc., Army National Guard |
| Education | University of California, San Diego |

3d

Send InMail  ▾

**77**
connections

Full profiles for 3rd-degree connections are available only to premium account holders.

**Upgrade your account »**

### People Similar to John



Claudius Jackson  3o
Sergeant First Class at Colorado Army Nation...
Connect

### Grow Your Career by Following:
## Encore Capital Group



Wade Williams    Encore Capital Group

**Wade, get the latest on Encore Capital Group Jobs, News & more!**

### People Also Viewed


Joe Romney
Process Manager II at Encore Capital Group

Corinne Durazzo
at Encore Capital Group


Diana Martinez
Division Manager at Encore Capital Group

April Lyons
Process Manager at Encore Capital Group


Sany Chay
Paralegal, Litigation at Encore Capital Group

adam sweninger
Process Analyst at Encore Capital Group

Molly Minick
Lead Legal Specialist

Jason Huber
Financial Analyst at Encore Capital Group

Shana Teusch
Experienced Operations and Call Center Senior Manager

Sam Wu
Program Manager at Encore Capital Group

**EXHIBIT 2**

  Advanced

Home    Profile    Network    Jobs    Interests                    Premium Solutions    Upgrade

App Developers: - Build and scale your mobile or web app fast using Google App Engine

**Encore Capital Group**                                         4,639 followers    **Follow**

Home    Careers    Products    Insights

**Recent Updates**

Encore Capital Group is hiring: Solutions Architect II in San Diego

Share    Careers at Encore Capital Group    See more jobs    1 day ago

See all activity »

**About Encore Capital Group**

Encore Capital Group is a leading provider of debt management and recovery solutions for consumers and property owners across a broad range of assets.

Through its subsidiaries, the company purchases portfolios of consumer receivables from major banks, credit unions, and utility providers, and partners with individuals as they repay their obligations and work toward financial recovery. Through its Propel Financial Services subsidiary, the company assists property owners who are delinquent on their property taxes by structuring affordable monthly payment plans.

Headquartered in San Diego, Encore is a publicly traded NASDAQ Global Select company (ticker symbol: ECPG) and a component stock of the Russell 2000, the S&P SmallCap 600, and the Wilshire 4500. More information about our company can be found at http://www.encorecapital.com.

**Specialties**
Debt Management, Recovery Solutions, Analytics, Financial Recovery

| Headquarters | Website | Industry |
|---|---|---|
| 3111 Camino Del Rio North, Suite 1300 San Diego, CA 92108 United States | http://www.encorecapital.com | Financial Services |
| | **Type** Public Company | **Company Size** 1001-5000 employees |
| | **Founded** 1953 | |

**How You're Connected**

   

**24** second-degree connections
**1,017** Employees on LinkedIn

See all ›

**Careers**

 **Interested in Encore Capital Group?**
Learn about our company and culture.
7 jobs posted

Learn more ›

**Products**

Let Encore Capital Group know you'd like to see their products and services here.

Send message ›

**Affiliated Companies**

Midland Credit Management

**People Also Viewed**

Portfolio Recovery Associates    LPL Financial

AACC    ENCORE

**EXHIBIT 3**

Search | LinkedIn
http://www.linkedin.com/vsearch/p?f_CC=16423&trk=rr_connectednes



Home   Profile   Network   Jobs   Interests ·

Advanced

Premium Solutions   Upgrade

**SEARCH**                      708 results                                                    Save search · ⚙

Advanced                       Current Company: Encore Capital Group  ×   Reset

All
People                         Adam Sragovicz  2nd
More...                        Director, Finance & Treasury, Encore Capital Group      [ Connect ▼ ]
                               Greater San Diego Area   Financial Services
**Relationship**  ▲            4 shared connections   Similar

1st Connections        (0)     Scott Goverman  2nd
2nd Connections       (24)     Vice President, Corporate Development at Encore Capital Group   [ Connect ▼ ]
Group Members         (14)     Greater San Diego Area   Financial Services
3rd + Everyone Else  (672)     1 shared connection   Similar

**Location**  ▲                Mikal Cox  2nd
                               HR Consultant at Encore Capital Group                  [ Connect ▼ ]
India               (356)      Greater San Diego Area   Staffing and Recruiting
United States       (318)      1 shared connection   Similar
New Delhi Area, India (135)
Greater San Diego Area (200)   Meri Miller-Decker, SPHR  2nd
Gurgaon, India       (93)      Director, Talent Acquisition at Encore Capital Group   [ Connect ▼ ]
+ Add                          Greater San Diego Area   Human Resources
                               1 shared connection   Similar
**Current Company**  ▲
All                            Mike Haubenstock  2nd
IBM              (309293)      Chief Risk Officer, Encore Capital                      [ Connect ▼ ]
Accenture        (174508)      Greater San Diego Area   Financial Services
Hewlett-Packard  (169456)      1 shared connection   Similar
Tata Consultancy S .. (160037) Current: VP and Chief Risk Officer at Encore Capital Group
US Army          (140548)
✓ Encore Capital Group (708)   Vishal Grover  2nd
+ Add                          Assistant Vice President - Talent Acquisition at Encore Capital   [ Connect ▼ ]
                               Group
**Industry**  ▼                New Delhi Area, India   Computer Software
                               2 shared connections   Similar
**Past Company**  ▼
                               John Kennedy  2nd
**School**  ▼                  Director, Operations (Internal Legal) at Encore Capital Group   [ Connect ▼ ]
                               Greater San Diego Area   Financial Services
**Profile Language**  ▼        1 shared connection   Similar

**Groups**  ▼                  Louis Alper  2nd
                               Connecting Great Talent with Great Jobs at Encore Capital Group!   [ Connect ▼ ]
**Years of Experience**  ▼     Greater San Diego Area   Staffing and Recruiting
                               1 shared connection   Similar
**Function**  ▼
                               Julie Reynolds  2nd
**Seniority Level**  ▼         Director, Corporate Communications at Encore Capital Group   [ Connect ▼ ]
                               Greater San Diego Area   Marketing and Advertising
**Interested In**  ▼           1 shared connection   Similar

**Company Size**  ▼            Eric Brochu  2nd
                               Sr. Storage Engineer at Encore Capital Group           [ Connect ▼ ]
**Fortune**  ▼                 Greater San Diego Area   Financial Services
                               1 shared connection   Similar
**When Joined**  ▼
                               [ 1 ]  2  3  4  5  6  7  8  9  10   Next >

**EXHIBIT 4**

# Encore Capital Group

A leader in distressed consumer debt buying and recovery.

NASDAQ: ECPG $33.11 -0.50

- About Encore
- Consumers
- Investors
- Partners
- Careers
- Newsroom





- About Encore
- Leadership Team
- Locations
- In the Community

## Leadership Team

Our Executive Leadership Team (listed alphabetically)

**Amy Anuk**
*Senior Vice President, Business Development*
Show Bio

**Greg Call**
*Senior Vice President, General Counsel, and Corporate Secretary*
Show Bio

**EXHIBIT 5**

**Carl Eberling**
*Senior Vice President, Information Technology and Chief Information Officer*
Show Bio

**Steve Gonabe**
*Senior Vice President, Human Resources*
Show Bio

**Paul Grinberg**
*Executive Vice President and Chief Financial Officer*
Show Bio

**Brandon Homuth**
*Senior Vice President, Global Operations*
Show Bio

**Ashish Masih**
*Senior Vice President, Legal Collections Operations*
Show Bio

**Jack Nelson**
*President, Propel Financial Services*
Show Bio

**Manu Rikhye**
*Senior Vice President, Indian Operations*
Show Bio

**Jim Syran**
*Senior Vice President, Operations and Chief Marketing Officer*
Show Bio

**Christopher Trepel, Ph.D.**
*Senior Vice President and Chief Scientific Officer*
Show Bio

**Ken Vecchione**
*President and CEO*
Show Bio

**Sheryl Wright**

**EXHIBIT 5**

*Senior Vice President, External Affairs*
Show Bio

- Home
- Locations
- Contact Us
- Sitemap
- Privacy Policy and State Disclosures
- © 2013 Encore Capital Group All Rights Reserved.

  - Midland Credit Management
    - Midland Funding LLC
    - Propel Financial Services
  - Consumer Credit Research Institute

**EXHIBIT 5**

down the outstanding balance into principal, interest, and fees. The Commission has found that such information would assist consumers in determining if the amount of their debts is correct.

## ACCOUNT DOCUMENTATION THAT DEBT BUYERS RECEIVED

***Buyers received few underlying documents about debts.*** Although buyers received the data file and some other information about the debts, as discussed above, they obtained very few documents related to the purchased debts at the time of sale or after purchase. For most portfolios, buyers did not receive any documents at the time of purchase. Only a small percentage of portfolios included documents, such as account statements or the terms and conditions of credit.

## WARRANTIES AS TO INFORMATION AND DOCUMENTATION THAT DEBT BUYERS RECEIVED

***Accuracy of information provided about debts at time of sale not guaranteed.*** In purchase and sale agreements obtained in the study, sellers generally disclaimed all representations and warranties with regard to the accuracy of the information they provided at the time of sale about individual debts – essentially selling debts, with some limited exceptions, "as is." The fact that portfolios were generally sold "as is" does not necessarily mean that information inaccuracies were prevalent, but it does raise concerns about how debt buyers handled purchased debts when such inaccuracies became apparent, and for which they had no recourse available from the seller.

***Accuracy of information in sellers' documents not guaranteed.*** Some contracts stated that when account documents were available from the seller, the accuracy of the information in the documents was not warranted.

## DEBT BUYERS' ABILITY TO OBTAIN ACCOUNT DOCUMENTATION

***Limitations were placed on debt buyer access to account documents.*** Buyers were given a defined amount of time (*e.g.*, typically between six months and three years) to request up to a specified maximum number of documents (*e.g.*, equal to 10% to 25% of the number of debts in the portfolio) at no charge. After that, buyers were given an additional, defined amount of time to request documents for a fee, usually between $5 and $10 per document, with a maximum number of documents again specified. Debt sellers usually had substantial time, typically between 30 and 60 days, to respond to requests for documents.

***Availability of documents not guaranteed.*** Most purchase and sale agreements stated that documents may not be available for all accounts.

***Additional limitations applied to the resale of purchased debt.*** If debt buyers resold debt to secondary buyers, the original creditors typically had no obligation to provide documents directly to the secondary

**EXHIBIT 6**
22

| Account Name | Account Number | Date Opened | Balance | Date Reported | Past Due | Status | Credit Limit |
|---|---|---|---|---|---|---|---|
| Balloon Payment Amount: | | | | Balloon Payment Date: | | | |
| Date Closed: | | | | Type of Loan: | | | Factoring Company Account (debt buyer) |
| Date of First Delinquency: | 08/2009 | | | | | | |
| Comments: | | Consumer disputes this account information, Collection account | | | | | |

**81-Month Payment History**

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2011 | * | * | * | * | | | | | | | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| MIDLAND CREDIT MANAG | 853386XXXX | | 03/2010 | $8,337 | 05/2011 | | $8,337 | COLLECTION ACCOUNT | |

**MIDLAND CREDIT MANAGEMENT**
8875 Aero Dr Ste 200
San Diego, CA-921232255

| | | | |
|---|---|---|---|
| Account Number: | 853386XXXX | Status: | COLLECTION ACCOUNT |
| Account Owner: | Individual Account. | High Credit: | $8,125 |
| Type of Account : | Open | Credit Limit: | |
| Term Duration: | | Terms Frequency: | |
| Date Opened: | 03/2010 | Balance: | $8,337 |
| Date Reported: | 05/2011 | Amount Past Due: | $8,337 |
| Date of Last Payment: | | Actual Payment Amount: | |
| Scheduled Payment Amount: | | Date of Last Activity: | N/A |
| Date Major Delinquency First Reported: | 04/2010 | Months Reviewed: | 11 |
| Creditor Classification: | | Activity Designator: | N/A |
| Charge Off Amount: | | Deferred Payment Start Date: | |
| Balloon Payment Amount: | | Balloon Payment Date: | |
| Date Closed: | | Type of Loan: | Factoring Company Account (debt buyer) |
| Date of First Delinquency: | 07/2009 | | |
| Comments: | | Consumer disputes this account information, Collection account | |

**81-Month Payment History**

No 81-Month Payment Data available for display.

Back to Top

EXHIBIT 7

WW 00000 3